**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE SUBPOENAS TO MCDERMOTT WILL & EMERY LLP, TOBY H. KUSMER, and HASAN RASHID** | **Case No. 14-mc-91726** |
| *issued in* | |
| **VIRNETX INC. and SCIENCE APPLICATIONS INTERNATIONAL CORPORATION,** | **Case No. 6:12-cv-855 (E.D. Tex.)** |
| *Plaintiffs,* | |
| **v.** | |
| **APPLE, INC.,** | |
| *Defendant.* | |

<u>**NONPARTY MOVANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH**</u>

Nonparty respondents McDermott Will & Emery LLP ("the Firm"), Toby H. Kusmer, and Hasan Rashid (collectively, "Movants"), respectfully submit this memorandum of law in support of their joint motion to quash nonparty deposition subpoenas ("the Subpoenas") that Apple, Inc. ("Apple") served on Movants in a lawsuit pending in the Eastern District of Texas, *VirnetX, Inc. v. Apple, Inc.*, 6:12-cv-855 (E.D. Tex.) ("the Underlying Litigation") for depositions in Boston, Massachusetts. This Court should quash the Subpoenas because they expressly request testimony about privileged information, are cumulative and redundant of Apple's prior oral depositions of Movants, and improperly impose an undue burden on Movants.

Over approximately the past two years, Apple has served at least 12 overly-broad and largely duplicative nonparty subpoenas on Movants in various lawsuits in a purported effort to

substantiate its claim that Movants engaged in inequitable conduct while prosecuting certain

patents on behalf of their client, VirnetX, Inc. ("VirnetX").  Having already deposed each of the

nonparty Movants on similar issues in previous lawsuits, Apple essentially seeks "do over"

depositions.  These "do over" depositions are especially egregious because Movants have served

as VirnetX's lawyers in a variety of matters for over 7 years, including litigation counsel in a

prior lawsuit involving one of the VirnetX Patents at issue. Given this history, the Subpoenas

would require the Firm to analyze over 1,300 technical documents and over 100 of the Firm's

patent prosecution files.  Plaintiffs ask that the Firm conduct this far-reaching investigation

despite the fact that Apple's inequitable conduct defense, which purportedly justifies this

discovery, relates to only two patents and a few of the 1,300 technical documents.  Apple has

refused to compromise by narrowing the scope of the Subpoenas to focus on the testimony Apple

actually seeks.  The Court should quash these abusive Subpoenas under Federal Rule of Civil

Procedure 45.

## I.  FACTUAL BACKGROUND

### A.  The Parties and the Nonparty Movants

VirnetX, a plaintiff in the Underlying Litigation, is an internet security company.

VirnetX's patent portfolio includes software and technology designed to create a secure

environment for real-time communication applications such as instant messaging and video

conferencing.[1] Apple, the defendant in the Underlying Litigation, designs manufactures and

markets mobile communication and media devices, personal computers, and portable digital

music players, many of which contain software or technology that facilitates real-time

communication between users.

---

[1] *See* VirnetX Corporate Profile, *available at*
http://ir.virnetx.com/phoenix.zhtml?c=67430&p=irol-IRHomepage.

Movants are a law firm and two of its attorneys that have represented VirnetX in a variety of patent matters for approximately 7 years.  (Declaration of Matthew E. Leno ("Leno Decl.") ¶ 4 (attached hereto as Exhibit A).)  The Firm has an office in Boston, Massachusetts, where both Kusmer and Rashid work.  (Leno Decl. ¶ 3.)  Movants' representation of VirnetX has included the prosecution of the patents at issue in the Underlying Litigation and the representation of VirnetX in a prior lawsuit against Microsoft Corporation for infringement of VirnetX's patents.  (Leno Decl. ¶¶ 5-6.)  Movants are not a party to the Underlying Litigation, do not currently represent, and have not represented VirnetX in any lawsuits against Apple. (Leno Decl.¶ 7.)

## B.    The Apple/VirnetX Lawsuits

VirnetX and Apple are currently litigating a dispute regarding Apple's alleged infringement of certain VirnetX patents ("the VirnetX Patents").[2]  This dispute has given rise to a series of related lawsuits, collectively referred to herein as "the VirnetX/Apple Lawsuits".[3]  In each of the VirnetX/Apple Lawsuits, Apple has claimed that either all or some of the patents at issue are unenforceable because of Movants' alleged "inequitable conduct" while prosecuting the VirnetX Patents.  In connection with this allegation, Apple has served Movants at least a dozen nonparty subpoenas over the past two years demanding that Movants produce documents and provide deposition testimony concerning the VirnetX Patents, their prosecution, certain

---

[2] The allegedly infringed patents are Nos.: 6,502,135 ("the '135 Patent"), 7,418,504 ("the '504 Patent"), 7,490,151 ("the '151 Patent"), 7,921,211 ("the '211 Patent"), 8,151,181 ("the '181 Patent"), and 8,504,697 ("the '697 Patent").  (Third Am. Compl. ¶¶ 7-12 (*Apple II*, Dkt. No. 114).)

[3] The Apple/VirnetX Lawsuits referred to herein include the following: *VirnetX Inc. v. Cisco Systems, Inc., et al.*, Civ. No. 6:10-cv-417 (E.D. Tex.) (*Apple I*); *Certain Devices with Secure Communication Capabilities, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-818 and Inv. No. 337-TA-858 ("the ITC Actions"); and the Underlying Litigation, *VirnetX Inc., et al. v. Apple Inc.*, No. 6:12-cv-855 (E.D. Tex.), consolidated with *VirnetX Inc. v. Apple Inc.*, No. 6:11-cv-563 (E.D. Tex.) (*Apple II*).

purported prior art, and Movants' representation of VirnetX.  (*See* Appendix of Nonparty

Subpoenas Served on Movants ("Subpoenas") (attached hereto as <u>Exhibit B</u>).)

> **1.    *Apple I***

On August 11, 2010, VirnetX filed *VirnetX Inc. v. Cisco Systems, Inc., et al.*, Civ. No.

6:10-cv-417 (E.D. Tex.) (*Apple I*).  VirnetX claimed that two Apple products infringed VirnetX

Patents '135, '151, '504 and '211 ("the *Apple I* Patents").  (Third Am. Compl. ¶ 37 (*Apple I*, Dkt.

No. 238).)  Apple's affirmative defenses included, *inter alia*, that each of the VirnetX Patents at

issue was unenforceable due to Movants' inequitable conduct during their prosecution or

reexamination.  (Countercls. ¶ 130 (*Apple I*, Dkt. No. 257).)  Specifically, Apple asserted that

during *VirnetX v. Microsoft Corp.*, No. 07-cv-80 (E.D. Tex 2008) ("the Microsoft Litigation"), in

which the Firm served as VirnetX's litigation counsel, Movants learned of Microsoft's

contention that the "Aventail Administrator's Guide" ("the Aventail Reference") was prior art to

the VirnetX Patents.  (Countercls. ¶¶ 25-27 (*Apple I*, Dkt. No. 257).)  Apple claimed that

Movants were aware of the Aventail Reference but intentionally concealed from the Patent

Office the fact that the Aventail Reference was prior art.  (Countercls. ¶¶ 19, 36, 43, 45 (*Apple I*,

Dkt. No. 257).)

On or about March 1, 2012, Apple served the Firm with a nonparty deposition subpoena

and a nonparty subpoena to produce documents ("the *Apple I* Subpoenas"). (Subpoenas at 4, 12.)

The *Apple I* Subpoenas sought the following general categories of information relating to

thirteen of VirnetX's patents, including five of the six VirnetX Patents at issue in the Underlying

Litigation: (1) the Firm's prosecution of the patents, (2) the Firm's awareness of prior art, and (3)

the Firm's communications with VirnetX and various third-parties regarding VirnetX's patents

and related litigation.  (Subpoenas at 8, 10-11, 19-20.)  On April 24, 2012, Kusmer was deposed

as the Firm's corporate representative in compliance with the *Apple I* Subpoenas.  (Leno Decl. ¶

10.)  Despite insisting on depositions of Kusmer and the Firm, Apple ultimately abandoned its inequitable conduct claims before the *Apple I* trial.  (Leno Decl. ¶ 11.)

### 2.    *The ITC Actions*

In 2011 and 2012, VirnetX filed two related actions with the United States International Trade Commission ("the ITC Actions") in which it claimed that Apple violated Section 337 of the Tariff Act by importing products that violated the '181 Patent.[4] *Certain Devices with Secure Communication Capabilities, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-818 ("the '818 ITC Action") and Inv. No. 337-TA-858 ("the '858 ITC Action").  Apple alleged that the '181 Patent was unenforceable due to essentially the same set of facts alleged in *Apple I* to have constituted inequitable conduct—Movants' purported concealment from the Patent Office of the possibility that the Aventail Reference was prior art. (*See* Resp. to Compl. at ¶¶ 54-84, ITC Inv. No. 337-TA-858, 2012 WL 7778989, at **21-29.)

Apple served Movants with five additional nonparty subpoenas in the ITC Actions:  (1) two nonparty deposition subpoenas on Rashid; (2) a nonparty deposition subpoena on Kusmer; and (3) additional nonparty deposition and document subpoenas on the Firm ("the ITC Action Subpoenas").  (Subpoenas at 21, 26, 28, 46, 53.)  These subpoenas sought documents and identified deposition topics that were nearly identical to those set forth in the *Apple I* Subpoenas.  (*Compare* Subpoenas at 10-11, 19-20 *to* Subpoenas at 34-35, 38-40.)  After numerous meet-and-confers, Apple agreed to designate the documents already produced by VirnetX, and Kusmer's deposition transcript from *Apple I*, as responsive to the ITC Action Subpoenas served on the Firm and Kusmer.  (Leno Decl. ¶ 13.)  Apple nevertheless insisted on Rashid's deposition.

---

[4] The '818 ITC Action was dismissed for failure to join Science Applications International Corporation ("SAIC"), the assignor of the '181 Patent.  In 2012, VirnetX addressed this defect by naming SAIC as a co-plaintiff and refiling the '858 ITC Action.

(Leno Decl. ¶ 13.)  On May 25, 2012, Rashid was deposed regarding the VirnetX Patents, his

role in their prosecution, and his knowledge of the Aventail Reference.  (Leno Decl. ¶ 14.)

### 3.  *The Underlying Litigation (a/k/a Apple II) and Apple's rejection of Movants' Local Rule 7.1 & 37.1 Attempts to Compromise*

On November 6, 2012, VirnetX filed the Underlying Litigation.  (Compl. (*Apple II*, Dkt.

1.)  In the Underlying Litigation, VirnetX claims that four Apple products infringe the four *Apple*

*I* Patents, the '181 Patent at issue in the ITC Action, and the '697 Patent.  (Third Am. Compl. ¶¶

7-13 (*Apple II*, Dkt. No. 114).)  Only the '697 Patent was not at issue in either *Apple I* or the ITC

Actions in which Movants were already deposed.

In the Underlying Litigation, Apple has yet again alleged that Movants engaged in

inequitable conduct.  (*Apple II* Countercl. ¶¶ 14 (*Apple II* Dkt. No. 120.)  While Apple has only

raised the defense with respect to the '181 Patent and the '697 Patent (the two patents not at issue

in *Apple I*), the factual basis of Movants' alleged inequitable conduct is essentially the same here

as with Apple's allegations of inequitable conduct in *Apple I* and the ITC Actions.  Specifically,

Apple contends that Movants were aware that the Aventail Reference may have constituted prior

art, but Movants intentionally concealed this information from, or misrepresented this

information to, the Patent Office during the prosecution of the '181 Patent and the '697 Patent.

(Apple Countercl. ¶¶ 14, 46-55, 95 (*Apple II* Dkt. No. 120.)  On or about July 22, 2014, Apple

served five more subpoenas on Movants, including the Subpoenas that are the subject of this

Motion.[5]  (Subpoenas at 58, 70, 74, 78, 88.)

---

[5] On August 14, 2013, Apple also served a nonparty subpoena on the Firm requesting the
production of ten categories of documents, seven of which were identical to those subpoenaed in
the ITC Actions.  (*Compare* Subpoenas at 34-35 *to* Subpoenas at 65-66.)  On August 27, 2013,
the Firm served its objections to this subpoena.  (Leno Decl. ¶ 16.)  Eight months later, on April
23, 2014, the Firm received a letter from Apple's new counsel which not only demanded that the
Firm produce the documents identified in the August 14, 2013 subpoena, but also attached
***another*** document subpoena containing ***thirty-nine additional requests***.  (Subpoenas at 87-102.)

Like those served in *Apple I* and the ITC Actions, the Subpoenas seek broad discovery on Movants' representation of VirnetX.  Although Apple's defenses only implicate Movant's work on the '181 and '697 patents, the Subpoenas require a study of every one of the Firm's over 100 prosecution files for VirnetX.  (Subpoenas at 83-84 (defining "Patents-in-Suit" and "Related Patents" to include all of the VirnetX Patents).)  And, although Apple likely only seeks to investigate one or possibly two instances of "prior art" related to the prosecution of the VirnetX Patents, compliance with the Subpoenas requires a study of over 1,300 technical documents.

Between September 4 and September 12, 2014, and pursuant to Local Rules 7.1 and 37.1, Movants met-and-conferred with Apple on multiple occasions by telephone and via e-mail to request that Apple narrow the scope of the Subpoenas.  In the spirit of compromise and to avoid having to prepare and file this motion, Movants offered to appear for depositions limited to non-privileged matters that occurred after the depositions taken in *Apple I* and the ITC Actions.  (*See* Motion to Stay, Exhibits A, B (ECF No. 1-2, 1-3).)  Unfortunately, on September 12, 2014, Apple refused.

## II.     LEGAL STANDARD

Depositions of opposing counsel are generally disfavored.  *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003); *Theriot v. Parish of Jefferson*, 185 F.3d 477 (5th Cir. 1999) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances.").  Numerous courts have concluded that allowing opposing counsel to be deposed has the potential to "chill[] the free and truthful exchange of information between attorneys and their clients" and creates a "unique opportunity for harassment." *Sterne Kessler Goldstein & Fox, PLLC v.*

---

On May 7, 2014, the Firm served its objections to this second document subpoena.  (Leno Decl. ¶ 16.)  These two document subpoenas are not subject of this Motion.

*Eastman Kodak Co.*, 276 F.R.D. 376, 381-82 (D.D.C. 2011) (internal citations omitted) (collecting and discussing numerous cases identifying concerns militating against allowing parties to depose opposing counsel). Courts have also viewed the practice with a "jaundiced eye" because of its tendency to "create a side-show that diverts attention from the merits of the case" by spawning litigation relating collateral issues such as privilege, work-product, and relevancy. *M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992).

When evaluating nonparty subpoenas, courts are required to consider both Rule 45 and Rule 26. *Alper v. U.S.*, 190 F.R.D. 281, 284 (D. Mass. 2000). Rule 45 provides that a court must quash or modify a subpoena that either: (1) "requires disclosure of privileged or other protected matter," or (2) "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). Rule 26 requires the courts to limit discovery if they determine that it would be "unreasonably cumulative or duplicative," or that the party seeking discovery "has had ample opportunity to obtain the information." Fed. R. Civ. P. 26(b)(2)(C); *see also Accusoft Corp. v. Quest Diagnostics, Inc.*, Civ. No. 12-40007-FDS, 2012 WL 1358662, at *12 (D. Mass. Apr. 18, 2012) (quashing subpoenas duces tecum). When attorney depositions are sought, courts also specifically consider "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) [whether] there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is ***relevant***, ***nonprivileged***, and ***crucial*** to the moving party's case." *Emhart Industries, Inc. v. New England Container Co.*, No. 11-023 S, 2013 WL 6001076, *2 (D.R.I. Nov. 12, 2013) (emphasis added) (citing *Bogosian*, 323 F.3d at 66).

## III.   <u>ARGUMENT</u>

This Court should quash the Subpoenas for at least three reasons. ***<u>First</u>***, much of the information Apple seeks is protected by the attorney-client privilege or the work-product doctrine; the long-standing attorney-client relationship between Movants and VirnetX, combined

with the vague, overly-broad Subpoenas, creates intractable privilege issues that Movants should

not be forced to address by continually assert privilege on a question-by-question basis over the

course of three seven-hour depositions.  **_Second_**, the Subpoenas seek testimony that is

unreasonably cumulative and duplicative of the nonparty deposition testimony that was actually

provided by Movants or could have been elicited from Movants in _Apple I_ and the ITC Actions.

**_Third_**, the Subpoenas are overly-broad and place an undue burden on Movants because

compliance would require a wide-ranging investigation of the prosecution history of over 100

different patent prosecution files and a review over 1,300 technical documents when it is likely

that only two of those files and a few of those technical documents are at all relevant.  Moreover,

the Subpoenas seek testimony to support the often-criticized defense of inequitable conduct

which Apple already investigated and abandoned in _Apple I._

     Apple has entirely ignored its duty to take reasonable steps to avoid imposing an undue

burden on Movants.  Movants ask the Court to quash the Subpoenas in their entirety.  Apple's

scorched-earth discovery tactics are inconsistent with their Rule 45 obligations.

     **A.**    **The Court Should Quash the Subpoenas Because They Expressly Require the Disclosure of Privileged and Protected Matter**

     Rule 45 states that a court must quash or modify a subpoena that "requires disclosure of

privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P.

45(d)(3)(iii).  Courts have concluded that privilege and related work-product issues are of

particular concern when a subpoena is directed at an opponent's counsel.  _See, e.g._, _Sterne

Kessler_, 276 F.R.D. at 380-81 ("Allowing depositions of opposing counsel, even if these

depositions were limited to relevant and non-privileged information, may disrupt the effective

operation of the adversarial system by chilling the free and truthful exchange of information

between attorney and their clients.").  Movants' seven years as patent prosecution and litigation

counsel to VirnetX, combined with the breadth of the discovery sought, presents intractable privilege and work-product issues that warrants quashing the Subpoenas.

### 1.     *Communications Protected by the Attorney-Client Privilege*

Movants represented VirnetX in original prosecution or reexamination prosecution proceedings involving each of the six VirnetX Patents at issue.  (Leno Decl. ¶ 5.)  Movants also represented VirnetX as litigation counsel for approximately 2.5 years concerning Microsoft's infringement of the '135 Patent.  *See VirnetX v. Microsoft Corp.*, No. 07-cv-80 (E.D. Tex 2008). Despite Apple's awareness of Movants' long-standing role as outside counsel to VirnetX, at least five of the sixteen topics identified in the deposition Subpoena served on the Firm direct it to disclose "communications" that fall squarely within the scope of the attorney-client privilege. These topics include:

- **Deposition Topic (2).** Communications between you and the named inventors of the [Patents].[6]

- **Deposition Topic (3).**  Communications between you and VirnetX, SAIC, or Leidos regarding any of the [Patents] or prior art to any of the [Patents].

- **Deposition Topic (4).**  Communications between you and VirnetX, SAIC, or Leidos regarding any litigation in which one or more of the [Patents] was asserted.

- **Deposition Topic (5).**  Communications between you and Banner & Witcoff regarding any of the [Patents], or any prior art to any of the [Patents].

- **Deposition Topic (6).**  Communications between you and Finnegan regarding any of the [Patents] or any prior art to any of the [Patents].

---

[6] Apple seeks not only communications with VirnetX, but also with the inventors of the VirnetX Patents, SAIC (a named party to the Underlying Litigation), and other law firms that have represented VirnetX in matters relating to the VirnetX Patents.  However, these communications would be subject to the same protections that apply to Movants' communications with VirnetX. *See, e.g.*, *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389-90 (Fed. Cir. 1996) (finding that communications between a patent licensor and the licensee's attorneys were protected by the "community of interest" doctrine).

(Subpoenas at 85-87.)  Most, if not all, communications within the scope of these five deposition

topics are protected by the attorney-client privilege.  The remaining deposition topics, while not

directly calling for the disclosure of Movants' communications with VirnetX, would also give

rise to attorney-client privilege issues to the extent that they require such communications to be

disclosed.  If Apple believes that certain relevant, ***non-privileged*** communications exist between

Movants and VirnetX, then Apple should identify those specific communications.  It has not

done so.  *See, e.g.*, *Sterne Kessler*, 276 F.R.D. at 385 (D.D.C. 2011) ("Simply claiming that an

opposing party's former counsel has 'non-privileged, factual information' without specifying

precisely what information is sought or the benefit of that information is insufficient to overcome

the potential risks that the Federal Rules were intended to protect against.").  The Court should

not permit Apple to proceed with the Firm's (or Kusmer's and Rashid's) deposition on these

topics because requiring counsel for Movants or VirnetX to interpose privilege objections on a

question-by-question basis would be wasteful and unduly burdensome.

### 2.  *Information Protected by the Work-Product Doctrine*

The Subpoenas also seek testimony protected by the work-product doctrine.  The

protections afforded by Rule 26(b)(3) extend only to "documents and tangible things," but courts

in this District have held that the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495

(1947) also protects "intangible" work-product.  *See, e.g., Bear Republic Brewing Co. v. Central

City Brewing Co.*, 275 F.R.D. 43, 45-46 (D. Mass. 2011) ("The work product privilege protects

intangible work product as well as what Fed. R. Civ. P. 26(b)(3) calls 'documents and tangible

things'.") (internal quotations omitted).  An attorney's testimony qualifies as protected intangible

work-product to the extent that it would reveal his reflections or recollections.  *See, e.g., In re

Grand Jury Subpoena Dated Nov. 8*, *1979*, 622 F.2d 933, 935 (6th Cir. 1980) (defining work

product as "the tangible and intangible material which reflects an attorney's efforts at

investigating and preparing a case, [the] preparation of legal theories, planning or strategy, and recording of mental impressions."). *See also S.E.C. v. Buntrock*, 217 F.R.D. 441, 446 (N.D. Ill. 2003) (prohibiting deposition of 30(b)(6) deponent on "legal theories and explanations of those theories").

Presumably to substantiate its allegations of inequitable conduct,[7] Apple seeks testimony regarding the following:

- **Topic (1)** – The preparation and prosecution of each of the [Patents] . . . including filings made to the U.S. Patent and Trademark Office in support of those patent applications or in support of any reexamination proceedings involving [the Patents].

- **Topic (4)** - Communications between you and VirnetX, SAIC, or Leidos regarding any litigation in which one or more of the Patents-in-Suit or Related Patents was asserted.

- **Topic (7)** – Prior art to any of the [Patents], including without limitation prior art cited during prosecution of the [Patents].

- **Topic (8)** – The circumstances under which you became aware of any prior art submitted to the USPTO during prosecution or reexamination proceedings for the [Patents].

- **Topic (9)** – Statements or arguments regarding prior art that you made to the USPTO during prosecution of, or during reexamination proceedings involving, the [Patents].

- **Topic (10)** – The circumstances under which you gained any knowledge regarding any document, system, thing or other art that you are aware has been alleged to constitute invalidating prior art to one or more claims of the [Patents], including sources form which or whom you gained such knowledge, the dates you gained such knowledge, and to whom such knowledge was shared within your firm.

(Subpoenas at 85-87.) These topics raise a variety of work-product concerns. For example, Topic (4) expressly seeks to elicit testimony regarding work-product created while the Firm served as litigation counsel for VirnetX during the Microsoft Litigation. The remaining topics

---

[7] In order to establish inequitable conduct, "[an] accused infringer must prove by clear and convincing evidence that the applicant knew of [a prior art] reference, knew it was material, and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

also implicate work-product to the extent the Firm's knowledge or impressions arose from its representation of VirnetX in the Microsoft Litigation.

**B.**   **The Subpoenas Are Duplicative of Prior Subpoenas Served on the Movants**

A district court may quash a subpoena that is "unreasonably cumulative or duplicative". Fed. R. Civ. P. 26(b)(2)(i); *Accusoft Corp.*, 2012 WL 1358662, at *12.  This Court should quash the Subpoenas because Apple essentially seeks a "do over" of Movants' depositions in the *Apple I* and the ITC Actions.  Apple's refusal to accept a compromise limiting the depositions to only the patent proceedings that took place after the earlier depositions highlights Apple's intention to rehash old ground.

In each of the VirnetX/Apple Lawsuits, Apple has contended that Movants intentionally concealed material information relating to the Aventail Reference and its publication date from the Patent Office during the prosecution of the VirnetX Patents.  (*Compare* Countcls. ¶ 26 (*Apple I*, Dkt. No. 257) *and* Countcls. ¶ 19 (*Apple II*, Dkt. No. 120).)  Apple served nonparty subpoenas on Movants in *Apple I* and the ITC Actions and deposed them with respect to their alleged deception of the Patent Office.  (Leno Decl. ¶¶ 10, 14.)  Any testimony that Apple seeks to obtain from the Subpoenas was already obtained—or could have been obtained—in those depositions.  Even Apple's factual allegations of inequitable conduct in the new prosecutions are essentially the same as those at issue in Apple I and the ITC Actions.  (Compare *Apple I* Countcls. ¶¶ 26-30 (*Apple I*, Dkt. No. 257) to *Apple II* Countcls. ¶¶ 51-54 (*Apple II*, Dkt. No. 120).)

The redundant nature of Apple's Subpoena served on the Firm in the Underlying Litigation compared to Apple's prior deposition of the Firm is shown in the topic comparison attached hereto as Exhibit C.  Exhibit C summarily shows that at least ten of the sixteen deposition topics identified in Apple's Subpoena served on the Firm in the Underlying Litigation

are nearly identical to the topics identified in the deposition subpoena served on the Firm in

*Apple I.*  (*See* Topic Comparison, <u>Exhibit C</u>.)  Furthermore, most of the facts supporting Apple's

alleged inequitable conduct charge occurred ***prior*** to Apple's depositions of Movants in *Apple I*

and the ITC Actions,[8] and therefore could have been explored at that time.[9]  *See* Fed. R. Civ. P.

26(b)(2)(C)(ii) ("[A] court must limit the frequency or extent of discovery [if] . . . the party

seeking discovery has had ample opportunity to obtain the information by discovery in the

action[.]").  To the extent that the Subpoenas served on Movants purport to identify "new"

topics, the Court should still preclude Apple from deposing Movants because Apple could have

examined Movants regarding such topics in the prior depositions.  The only information that

could not have been sought in the prior depositions relates to subsequent prosecution efforts and

Apple is unwilling to limit the scope of the Subpoenas to that work.

        Even if Apple could not have inquired about certain narrow topics in its prior depositions

of Movants, the Court should nevertheless quash the Subpoenas because Apple has made

absolutely no effort to specifically identify or limit the depositions to those topics.  To allow

Apple to "demand the moon thinking [it] can always fall back to something reasonable" sets a

dangerous precedent.  *Straight Path IP Group, Inc. v. Blackberry Limited*, No. C 14-80150, 2014

---

[8] The only alleged inequitable conduct to have occurred ***after*** Movants' depositions are their purported misrepresentations on May 29, 2012 Patent (*Apple II* Countercls. ¶ 71); and Movants' alleged attempt to "overwhelm the examiner" with disclosures relating to the '697 Patent between April 24, 2012 and March 26, 2013 (*Apple II* Countercls. ¶ 88.).

[9] Of those Subpoena topics in the Underlying Litigation that are not duplicative of the subpoena topics in the prior litigation, they generally relate to matters such as document retention policies. Courts routinely refuse such deposition inquiry when the requested testimony does not relate to a matter relevant to a claim or defense.  *EEOC v. Boeing Co.*, 2007 WL 1146446 (D. Ariz. Apr. 18, 2007) (denying motion to compel 30(b)(6) testimony regarding document collection and production because the testimony sought did not "relate to a matter relevant to a claim or defense").  Apple makes no such allegations in its inequitable conduct claims, and even if it did, it waived its opportunity to make such claim or defense by failing to previously raise such an argument in the approximately two years since Apple deposed Movants.

WL 3401723, at *5 (N.D. Cal. July 8, 2014).  Rather than condone Apple's over-reaching, "the baby should go out with the bath water."  *Id.*  The duplicative and cumulative nature of the Subpoenas improperly thrusts upon Movants and the Court the burden of identifying the topics that were already explored, the topics that were not already explored, and the topics that could not have been explored in the prior depositions.  This does not comport with Rule 45.

### C.        The Subpoenas Impose an Undue Burden on Movants.

Rule 45(d)(3) of the Federal Rules of Civil Procedure states that a court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3). Evaluating whether the burden of compliance is undue involves a demanding and sensitive balancing of interests.  When striking this balance, the First Circuit has instructed that because nonparties are not expected to "accept [discovery's] travails as a natural concomitant of modern civil litigation," their burden of compliance is entitled to "special weight in evaluating the balance of competing needs."  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). The balancing of Movants' and Apple's respective interests weighs heavily in favor of quashing the Subpoenas: instead of providing narrow deposition topics identifying the specific relevant information actually sought, Apple chose to keep Movants in the dark by identifying vague and overbroad deposition topics.  By doing so, Apple has unjustifiably multiplied Movants' burden of compliance demanding a Herculean effort to prepare for the full scope of the deposition, when only a very small amount of the preparation will be put to use.

As an example of their over-breadth, the Subpoenas require the Firm to investigate the details of over **1,300** technical documents submitted to the Patent Office, the circumstances under which the Firm became aware of such documents, and the statements or arguments the Firm made to the Patent Office about such documents. (Subpoenas at 86 (Topics 7-11).) However, Apple is undoubtedly aware that such a wide-ranging investigation is unnecessary and

would entail a burdensome review of wholly irrelevant material.  Apple's affirmative duty under Rule 45(d)(1) to avoid imposing an undue burden on Movants required Apple to limit the noticed deposition topics to only those specific non-privileged matters that can only be investigated by deposing Movants.  Apple's overly-broad subpoenas demonstrate their complete disregard for this obligation.

Similarly, Apple's inequitable conduct defenses only implicate Movant's work in two of the VirnetX Patents: the '181 and the '697 Patents.  Yet, the Subpoenas require a study of the Firm's preparation and prosecution of each of the six VirnetX Patents and all "related patents." (Subpoenas at 85.).  The "related patents" definition expands the scope of the Firm's investigation to include **over 60** different U.S. prosecution files, and even includes **over 40** different prosecution files for related **foreign** patent applications.  (Leno Decl. ¶ 17.)  Yet again, Apple has failed to make a good faith effort to tailor the Subpoenas so as to limit the burden on Movants.

In another example, Apple demands that the Firm prepare someone to testify as to all "communications" between any Firm attorney or employee and VirnetX and its agents regarding the prosecution of the patents, litigation relating to the patents, and any "prior art." (Subpoenas at 85-86.)  This topic alone—although also objectionable as being clearly privileged—covers nearly all communications between Movants and VirnetX in the past 7 years related to the Firm's patent prosecution for VirnetX.

Apple surely knows with much greater specificity the subject matter it wishes to investigate.  In what is undoubtedly a tactical maneuver, Apple chose to keep secret that subject matter rather than simply reveal it to the Movants and allow them to prepare.  In doing so, Apple has improperly chosen to thrust upon Movants the burden of revisiting much of its work for

VirnetX over the last 7 years for a tactical advantage.  Even during the meet-and-confer between counsel for Apple and Movants, Apple refused to narrow the Subpoenas to the topics it planned to actually investigate, despite the fact that it knew the Subpoenas were overbroad.  (*See* Meet-and-Confer Correspondence, ECF No. 1-2, 1-3.)  This behavior does not comply with Rule 45(d)(1).  Apple's staunch refusal to properly tailor the Subpoenas justifies tossing the baby out with the bathwater. *See Straight Path IP Group, Inc.*, 2014 WL 3401723, at *4.

Causing the Firm to investigate these overly-broad topics would also be daunting because the Subpoenas purport to define the Firm as including all "current or former attorneys, associates, partners, members, principals, shareholders, employees, affiliates, or other agents." (Subpoenas at 82, ¶ 1.)  The Firm currently has over 1,100 attorneys and countless additional employees. (Leno Decl. ¶ 2.)  In the 7 years the Firm has represented VirnetX many people have been involved in the prosecution of, or litigation relating to, the VirnetX Patents.  Although it is difficult to estimate the number of hours needed to prepare for the full scope of these broad Subpoenas, Movants estimate that preparation would require at least hundreds of hours. (Leno Decl. ¶ 19.)

Finally, Movants' burden of complying with the Subpoenas far outweighs any potential benefit associated with their testimony. *See Bogosian*, 323 F.3d at 66 (indicating that the Court should consider "to what extent the information sought is ***relevant*** . . . and ***crucial*** to the moving party's case") (emphasis added).  Apple has already deposed each of the movants in either *Apple I* or the ITC Actions; therefore permitting the depositions to proceed would likely yield minimal benefit to Apple.  While Apple may argue that the depositions are relevant to its defense of inequitable conduct, courts have routinely criticized the frivolity of the inequitable conduct defense, which they have labeled "an absolute plague." *Burlington Industries, Inc. v. Dayco*

*Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).  The Federal Circuit in particular has decried

litigants' "habit of charging inequitable conduct in almost every major patent case", and has

recently "tighten[ed] the [applicable standards] in order to redirect a doctrine that has been

overused to the detriment of the public."  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649

F.3d 1276, 1290 (Fed. Cir. 2011).  Apple cannot show that the Underlying Litigation is one of

the rare instances when there may be genuine merit to a defendant's charge of inequitable

conduct.  To the contrary, the fact that Apple asserted this defense in *Apple I*, deposed Movants

on their alleged deception of the Patent Office, but decided not to present the defense at trial,

confirms its weakness.  There is no benefit in subjecting Movants to further discovery in support

of a claim that tends to "destroy the respect for [opposing counsel's] integrity," *id.* at 1422, only

to have Apple again abandon this divisive claim prior to trial.

## IV.  <u>CONCLUSION</u>

WHEREFORE, the Movants respectfully request that this Court: (i) grant their Motion;

(ii) quash the Subpoenas; and (iii) award such other relief as the Court deems proper.

Dated:  September 17, 2014                    Respectfully submitted,

                                              /s/ *Matthew E. Leno*____
                                              Matthew E. Leno (BBO 657152)
                                              MCDERMOTT WILL & EMERY LLP
                                              28 State Street
                                              Boston, MA 02109-1775
                                              T: 1 (617) 535-4000
                                              F: 1 (617) 535-3800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2014, I filed the foregoing document with the District Court for the District of Massachusetts via the Court's ECF system. Any parties that have appeared in this case shall be served via the Court's ECF System.  I further certify that I sent a file-stamped copy of the foregoing document to the parties listed below via e-mail and first-class U.S. mail on September 17, 2014.

| | |
|---|---|
| David Draper | Andrew R. Levin, BBO No. 631338 |
| Kirkland & Ellis LLP | Sugarman Rogers, Barshak & Cohan, P.C. |
| 601 Lexington Avenue | 101 Merrimac Street |
| New York, New York 10022 | Boston, MA 02114 |
| *david.draper@kirkland.com* | levin@srbc.com |
| ***Attorney for Apple, Inc.*** | ***Attorney for Apple, Inc.*** |
| | |
| Andy Tindel | Jason Dodd Cassady |
| Attorney & Counsel at Law, P.C. | Caldwell Cassady & Curry, PC |
| 112 E. Line, Suite 304 | 2010 Cedar Springs Road, Suite 1000 |
| Tyler, TX 75702 | Dallas, TX 75201 |
| *atindel@andytindel.com* | *jcassady@caldwellcc.com* |
| ***Attorney for Science Applications International Corporation*** | ***Attorney for VirnetX, Inc.*** |

/s/ *Sam P. Myler*
Sam P. Myler

DM_US 55014298-8.077580.0158